HOFFMAN, Adm'r of OWINGS, *et al. vs.* CROMWELL.
*June,* 1834.

O devised certain lands to his son W, and his heirs, upon condition that he and they, or the person or persons to whom the estate devised may eventually pass "maintain my daughter R, or pay £ 60 current money a year, for her maintenance during her natural life." W having failed either to maintain R, who was an idiot, or to pay the £ 60 during his life, his real estate including that devised, was sold upon the application of creditors, by the court of Chancery, for the payment of his debts. In the distribution of the proceeds of sale, a large sum was found due to R for arrearges of principal, and interest of the £ 60 legacy. C, who had maintained R for many years and until her death, petitioned the Chancellor to deduct the amount found due to her, to be paid to him, upon the ground that he had a *lien* on the fund. H, the administrator of R, resisted this petition claiming the fund. HELD, that C was entitled to it.

In this case it further appeared, that the mother of R, who survived her husband, by her will devised all the residue of her estate to her eight daughters, to be equally divided between them; and that the portion of her estate bequeathed to her daughter R, should be laid out in the purchase of bank stock in the name of R, and her daughter U the wife of C, should receive the dividends and apply the same to the support of R during her natural life; that R was to be removed to the house of U, and from the death of R the stock was given to U, as a compensation for her trouble in providing for R. And in case U should die before R, then she was to be removed to the house of D, and the testator then gave to D the same power to receive dividends, with the same direction as to their application as in the case of U, and after the death of R, then the stock was to go to D, as a compensation for her trouble. The Chancellor upon the application of C allowed him $500 per annum for the support of R, which exhausted all the dividends upon her bank stock, and left a larger balance due than the proceeds of the annuity. HELD, that the balance of the annuity should be paid to C, out of the proceeds of the real estate devised to W, to the amount of the Chancellor's allowance.

APPEAL from the court of Chancery.

By the will of *Samuel Owings*, executed in the year 1803, certain lands and property are devised to his son *William*, upon the following conditions,—"To hold the same to him the said *William Owings*, his heirs and assigns forever, upon the express condition, that he, and they, or the person or persons to whom the estate devised to the said *William Owings*, may eventually pass, maintain my daughter *Rebecca*, or pay sixty pounds current money a year, for her maintenance during her natural life.

*William Owings*, the devisee, having failed either to maintain the said *Rebecca*, (who was an idiot,) or to pay the £60, provided by the will of her father for that purpose, and being dead, his real estate including that devised to him by his father *Samuel Owings*, was, upon the application of certain of his creditors, sold for the payment of his debts, by the decree of the Chancery court.

In the distribution of the proceeds of the sale, there was found due to the aforesaid *Rebecca*, (the deceased,) for arrearages of the principal, and interest of the £60, the sum of $7044 77.

In this state of the case the appellee, *John Cromwell*, who had maintained and taken care of the said *Rebecca* in his family, from the year 1810 to the year 1828, when she died, petitioned the Chancellor to direct, that the amount so found due to her, should be paid to him, upon the ground that he had a lien upon the fund.

The appellant, *Hoffman*, who had taken out letters of administration on the estate of *Rebecca Owings*, and several of her representatives objected to the allowance of this claim; insisting that the amount exceeded a reasonable remuneration to the appellee, for the services and expenses incurred by him; and further, that the amount ascertained to be due to the said *Rebecca*, should be paid to her administrator, and by him accounted for in the usual way. And they further contended, that the following clause in the will of *Deborah Owings*, the mother of *Rebecca*, executed

in 1810, was intended as a substitute for the provision for her support, and that consequently the appellee had no right whatever to any part of that provision.

"Item—I give and bequeath all the rest, &c. of my estate, to my eight daughters, to wit, *Urath Cromwell* (the wife of the appellee) *Eleanor C. Moale, Sarah Winchester,* *Rebecca Owings, Deborah Hoffman, Frances Moale, Mary Cromwell*, and *Ann Winchester*, to be equally divided between them; and it is my will and desire, that the portion of my estate above bequeathed to my daughter *Rebecca*, shall as soon as convenient after my decease, be laid out by my executor in the purchase of bank stock, and the said stock when so purchased, shall be held in the name of my said daughter *Rebecca*. And I do hereby authorise and empower my daughter *Urath Cromwell*, to demand and receive the interest or dividends arising from the said stock, and to apply the same to the support and maintenance of my said daughter *Rebecca* during her natural life, it being understood, that my said daughter *Rebecca*, is to be removed to the house of my said daughter *Urath Cromwell*, and from and after the decease of my said daughter *Rebecca*, I give and bequeath the bank stock aforesaid, unto my said daughter *Urath Cromwell*, as a compensation for her trouble in providing for, and taking care of my said daughter *Rebecca*. But in case my said daughter *Urath* should die before my said daughter *Rebecca*, then, and in such case my said daughter *Rebecca*, to be removed to the house of my daughter *Deborah Hoffman*,"—and the testatrix then gives to the said *Deborah*, the same power to receive the dividends on the bank stock, which the preceding clause gave to *Urath Cromwell*, with the same direction as to their application; and after the death of *Rebecca*, the said stock was to become the property of *Mrs. Hoffman*, as a compensation for her trouble in taking care of the said *Rebecca*.

The auditor having stated an account, in which after crediting the appellee for the support, maintenance, clothing, and medical attendance of the said *Rebecca*, from the 12th

of December, 1810, to the 19th of August, 1828, at the rate of $500 per annum, and the interest thereon; and charging him with the dividends on the bank stock, according to the will of *Deborah Owings*, the mother, reported a balance due the appellee of $11,484 97.

This account was submitted to *Bland*, Chancellor, upon exceptions filed by the appellants; and his honor, having by his order of the 8th of November, 1831, overruled the same, and directed the amount due *Rebecca Owings*, from the estate of *William Owings*, to be paid to the appellee; the appellants brought the record upon appeal to this court.

The cause was argued before BUCHANAN, Ch. J., and STEPHEN, ARCHER, and DORSEY, J.

*Moale* and *Alexander*, for the appellants, contended,

1. That if the appellee has any claim upon the fund in question, it must be for an amount much less than has been allowed him; independently of any objection to the claim founded upon the provision in the will of *Deborah Owings*, which they insisted, was a full compensation to the appellee for the maintenance of *Rebecca*, and was so intended by the testatrix.

2. As the decree in the case provides for the sale of the estate of *William Owings* deceased, for payment of his debts, the proper and only subject of litigation in the suit, so far as the parties to this appeal and the representatives of the said *William* are concerned, is the validity of the claim of the said *Rebecca*, against the estate : and it is not competent for the appellee, to engraft into this suit any litigation respecting the validity of his claim, as a creditor of said *Rebecca*. 2 *Mad. Ch. Pr.* 192. 1 *Chitty Dig.* 281.

3. That the amount due *Rebecca*, should be directed to be paid to her administrator, *Hoffman*, to be applied by him in due course of administration.

*Heath* and *Mayer*, for the appellee.

The question is, whether the fund shall be paid to the appellee, the only creditor, or to *Hoffman* the administrator. This money has been brought into the court of Chancery, by the exercise of its peculiar and appropriate jurisdiction. It is the money of an idiot, and is the *very* fund provided by her father for her maintenance; and consequently, paying it to the appellee, who did in fact maintain her, is giving it the very destination designed by him from whom it was derived. No reason can be given, why the appellee, who is unquestionably entitled to the fund, should be turned from the court of Chancery, and driven to the circuity of suing at law, where his claim might be defeated by limitations. The court of Chancery having had jurisdiction of the subject will retain it. 17 *Johns. Rep.* 384.

The appellee having done that which *William Owings* was bound to have done, is entitled to be substituted for him, as respects the fund. 1 *Johns. Ch. Rep.* 409. 2 *Ib.* 554. 4 *Ib.* 123. He, *William Owings*, was merely the trustee of this money appropriated by the father for the support of his daughter, and the appellee having done that which the fund was designed to have done, is entitled to receive it. It belongs to him in virtue of an equitable lien upon it. 1 *Pr. Wms.* 482, 538. 1 *Ves. Jr.* 277.

When the court of Chancery is in the possession of the assets of a deceased estate, it will administer them, and not send the creditors to a court of law. 4 *Johns. Ch. Rep.* 619. 2 *Atk.* 363. 3 *Ib.* 363. *Rebecca Owings*, though she was entitled to the enjoyment of the fund, never had a right to its possession, and if she had no such right, her administrator can have none. If *Rebecca* herself was alive, the court would not direct this money to be paid to her, but to the appellee, in consideration of his having done that which the fund was designed to have done, and it follows therefore, that her administrator cannot recover it.

The provision in the will of *Mrs. Deborah Owings* cannot be regarded as a substitute for this. If it had been

made in favor of the appellee himself it should be regarded as merely cumulative. But such is not the fact, it is in favor of his *wife, Mrs. Cromwell,* for her care and attention. It cannot therefore be considered as a satisfaction, either in whole or in part of the claim of the appellee. If *Mrs. Deborah Owings* can be supposed to have intended to provide a substitute, for the provision made by the father for the support of his daughter, you must suppose she intended to relieve *William Owings* from that burden, a supposition which is wholly inadmissible.

DORSEY, J., delivered the opinion of the court.

The first question we are called on to decide in this case is, whether the annuity provided by *Samuel Owings,* in his last will and testament, for the maintenance of his idiotic daughter *Rebecca,* and now in the Chancery court in virtue of a decree for the sale of the land, on which it was a charge, is to be paid over to the administrator of *Rebecca,* or to the person by whom during life she was maintained? The entire annuity, in the opinion of the court, not being more than sufficient to discharge the claim for her maintenance, it is unnecessary for us to inquire, whether her administrator, had there been a surplus, would have been entitled to claim it. The solution of the first question mainly depends upon the true construction of that part of the testator's will, by which the annuity is created. If it were a general bequest to *Rebecca Owings;* or if when received by her administrator, it would constitute a fund applicable to the payment of her debts generally, there cannot be a doubt of his right to receive it. No principle of law being more conclusively settled as a general rule, than that a creditor, as such, cannot sue either at law or in equity the debtor of his deceased debtor. If this on the part of *Cromwell* be such a suit, it is clearly not sustainable.

The words of the will applicable to this subject are as follows; "to hold the same to him the said *William Owings,* his heirs and assigns forever, upon the express condi-

tion, he and they, or the person or persons to whom the estate devised to the said *William Owings* may eventually pass, maintain my daughter *Rebecca*, or pay sixty pounds current money a year for her maintenance during her natural life." In the event of *William Owings* or those claiming under him failing to maintain *Rebecca*, to whom is this provision for her maintenance to be paid? The intention of the testator must solve this inquiry. Was it to be paid to *Rebecca?* Had such been the design of the testator, he would have used apt words to express it. Such could not have been his intention knowing as he did, that his unfortunate daughter from mental imbecility was incompetent to the management of the fund provided for her maintenance. The object of the devisor, was the application of the annuity to the comfort and maintenance of his daughter. That being accomplished, it was immaterial to him by whom the expenditure should be made. He designates no person for that purpose. What then is the natural justice and equity of the case? What the common sense and fair interpretation of the bequest? Why, that he who maintains *Rebecca*, is to receive the annuity provided for her maintenance. In the contemplation of a court of equity, this clause in the will is to be regarded in the same light, as if in so many terms it had ordered the annuity to be paid from time to time, to him by whom *Rebecca* should be maintained. Who upon the ordinary principles of human action, could the testator suppose would expend his time and money in the maintenance of this unhappy being, unless he were authorised to claim the fund provided for that purpose? It has been said, that such claim might well be made of her administrator. Can it be supposed for a moment, that such an idea entered the imagination of the testator? Was it his intention that this annual stipend should be withheld from him for whom it was designed, until it could be claimed of her administrator after the death of *Rebecca Owings?* Who would have maintained her on such terms? If then her maintainer was entitled to reimbursement out of this fund in the life-time

of *Rebecca,* where was he to seek it? Whom could he sue to obtain it? The answer to these interrogatories is obvious. He is the creditor of the fund, having a clear equitable lien upon it, which can be asserted only in a court of equity. The death of *Rebecca* works no change in his rights or his remedy.

But it has been insisted, that the provision made by *Deborah Owings,* the mother of *Rebecca,* was intended as a substitute for that in the will of her deceased husband. There is nothing in the circumstances of the case, in the terms of the bequest, or in the nature and extent of the provision made, clearly indicating such to have been her intention. On the contrary if we advert to the great inadequacy and contingent character of the fund provided by the mother, it is fair to presume that she designed it, not as the substitution of a new and adequate provision for her daughter's maintenance, but as an auxiliary to the inadequate provision heretofore created by the father. We attach no weight to the eulogies bestowed on the father, nor to the alleged improbability that he should have left an insufficient provision for his afflicted child. It was natural for him to suppose, nay, there is nothing improbable in the belief, that it may have been the express understanding between them, that the mother as well during her life as afterwards, should provide an additional fund for the maintenance of their daughter.

The only remaining objection which has been urged against the decree of the Chancellor, is the unreasonableness of the amount which has been allowed for maintenance. This cannot be regarded as an abstract question, dependent for its determination on any general rule or principle of law or equity, applicable to all cases where an allowance for maintenance is to be adjusted, but rests on its own peculiar circumstances, as every case of the kind must do. We look to the condition in life of all the parties connected with the question, their standing in society, their pecuniary abilities, the amount of the fund provided for maintenance,

the situation in which the person supported is placed, the character of the support designed and afforded, the habits and dispositions of the individual to be maintained. Having reference to all these considerations, we are of opinion, that the Chancellor was right in allowing to the complainant, the entire fund provided by both father and mother for the maintenance of *Rebecca Owings*. Neither testator nor testatrix ever contemplated that any portion of it should remain unexpended for distribution among her representatives.

DECREE AFFIRMED WITH COSTS.